1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7
8

| | |
|---|---|
| SAMANTHA SKINDELL, | No. |
| **Petitioner**, | |
| v. | VERIFIED COMPLAINT AND PETITION FOR ISSUANCE OF A SHOW CAUSE ORDER AND FOR RETURN OF CHILD TO CANADA |
| JUSTIN ROBERT SKINDELL, | |
| **Respondent**. | |

NOW COMES PETITIONER, SAMANTHA SKINDELL, by and through her attorneys, and as and for her Petition to the Court for Issuance of a Show Cause Order and Demand for Return of Minor Child to Canada, alleges and shows the Court as follows:

I.   **Introduction**

1.      Petitioner, Samantha Skindell ("Samantha Skindell"), is a resident of British Columbia, Canada ("Canada") seeking the return of her minor child, who was wrongfully retained in the United States of America from Canada by the child's father without Samantha Skindell's knowledge or consent on or about November 27, 2021. Samantha Skindell brings this action pursuant to the Convention on the Civil Aspects of International Child Abduction ("Convention"), done at the Hague on October 25, 1980 (T.I.A.S. No. 11,670 at 1, 22514

Complaint and Petition

**- PAGE 1 OF 13**

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com*

U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986)). Ex. A.  The Convention came into effect in the United States of America ("United States") on July 1, 1988, and was ratified between the United States and Canada. Article I of the Convention explains that its objectives are: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting states; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Article II of the Convention provides that "[t]he judicial or administrative authorities shall act expeditiously in proceedings for the return of children."

2.      The provisions of the Convention have been given the force and effect of law by the United States Congress through the passage of the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. (1995) ("ICARA"). The ICARA was enacted for the specific purpose of "establish[ing] procedures for the implementation of the Convention in the United States." 42 U.S.C. § 11601(b)(l).

3.      The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of the child; it does not, however, allow the district court to consider the merits of the underlying custody dispute.

## II.      Jurisdiction and Venue

4.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 42 U.S.C. § 11603(a).

5.      Venue is proper in the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 9003, 28 U.S.C. § 139l(d) and 42 U.S.C. § 11603(b),

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com*

because the father and the child who are the subject of this Petition are located in Pierce County, Washington, which is located in this District.

### III.    Parties and Wrongfully Removed Children

6.      Samantha Skindell, a Canadian citizen is employed full time as a sterilization assistant at Seashell Dental Center and also by FYI Doctors in Canada and permanently resides in Canada. Samantha Skindell was born on August 28, 1991. Samantha Skindell is both an "applicant" as defined in 42 U.S.C. § 11602(1) and a "petitioner" as defined in 42 U.S.C. § 11602(4).

7.      The Respondent, Justin Robert Skindell, ("Justin Skindell"), is a citizen of the United States and a current permanent resident of Canada. He is also a "respondent" within the meaning of 42 U.S.C. § 11602(6). On information and belief, Justin Skindell is currently residing Pierce County, Washington.

8.      Samantha Skindell and Justin Skindell are the parents of S.S., a child who was born in Olympia, Washington in 2019. Ex. B. The child is a minor under the age of 16 who is thus subject to the terms of this Convention in accordance with Article 4 thereof.

9.      Samantha Skindell and Justin Skindell were married on February 6, 2015 in the United States and have continuously lived in Canada since they moved to Canada on or around August 2, 2021.

10.     Samantha Skindell and Justin Skindell have resided together in the martial residence as husband and wife in Canada.

Complaint and Petition

- PAGE 3 OF 13

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE*
*Seattle, WA  98125*
*Tel: (206) 223-0840*
*Fax: (206) 260-1420*
*E-Mail: yale@yalelewislaw.com*
*E-Mail: admin@yalelewislaw.com*

11.     Samantha Skindell is employed at concurrently at Seashell Dental Center (Since September 2021) as a sterilization assistant and FYI Doctors (Since November 2021) as a receptionist. Her employers do not have offices in the United States.

12.     Samantha Skindell was present for the birth of the minor child and is listed as the mother on the birth certificate of the minor child. She has resided with Justin Skindell and their minor child at the parties' marital residence located in British Columbia, Canada.

13.     Samantha Skindell saw Justin Skindell and the minor child regularly and on a daily basis between the birth of the minor child on October 27, 2019, and November 27, 2021, when Justin Skindell wrongfully retained the minor child in the United States of America.

14.     On November 27, 2021, Justin Skindell, with the minor child, did not return to Canada from the United States of America. This was against the consent of Samantha Skindell. Upon information and belief, Justin Skindell continues to remain in Pierce County Washington. Justin Skindell is presently wrongfully retaining the child in the State of Washington, County of Pierce.

15.     Since the wrongful retainment of the child in the United States of America, Samantha Skindell has asked Justin Skindell to speak with the minor child via telephone and/or video-chat application. Justin Skindell has not allowed such communications between Samantha Skindell and the minor child to occur. Samantha Skindell has not seen the minor child since November 27, 2021.

16.     On December 2, 2021, Samantha Skindell submitted her application pursuant to the Hague Convention to the government of Canada who forwarded the same to the United States Central Authority. Ex. C.

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com*

**IV.**     **Justin Skindell's Violation of the Convention and ICARA**

17.     At the time Justin Skindell wrongfully removed the minor child from Canada and retained the child in the United States of America, the minor child's habitual residence, within the meaning of Article 3 of the Convention, was Roberts Creek, Canada. Samantha Skindell did not consent or subsequent acquiesce to the minor remaining in the United States beyond December 2, 2021.

18.     The term "habitual residence" is undefined by the Convention. *Koch v. Koch*, 450 F.3d 703, 708 (7th Cir. 2006). The determination of habitual residence "is a fact-specific inquiry that should be made on a case-by-case basis. Moreover, . . . a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001). The analysis "focuse[s] on the parents' last shared intent in determining habitual residence" *Koch*, 450 F.3d at 715.

19.     In the present case, the parties' actions clearly demonstrate that Canada, not Washington, is the habitual residence of the children:

a.     Samantha Skindell is a citizen of Canada and Justin Skindell is a permanent resident of Canada;

b.     Samantha Skindell and Justin Skindell have resided together as husband and wife since their marriage on February 6, 2015 and have lived and worked in Canada since August 2021;

c.     Samantha Skindell and Justin Skindell were married on February 6, 2015 in the United States and have continuously lived in Canada since August 2021;

**Law Offices of O. Yale Lewis III**
*11515 36ᵗʰ Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com*

d.      The minor child has lived continuously in Canada until he was wrongfully retained in the United States;

e.      Samantha Skindell is employed at Seashell Dental Center (Since September 2021) as a sterilization assistant and FYI Doctors (Since November 2021) as a receptionist. Both employers are located in Canada;

f.      All of the minor child's doctors and medical professionals are located in Canada;

g.      All of the minor child's friends and family are located in Canada;

h.      The minor child participated in all of the cultural customs and traditions in Canada;

i.      At no time did the parties make plans to move back to the United States;

j.      The parties and the minor child have health care coverage in Canada, and the parties do not have health insurance in the United States; and

k.      Both parties received regular healthcare and dentistry in Canada.

18.     The children have always had a nanny or childcare in Canada. Because the child's habitual residence at the time he was wrongfully removed to the United States was Canada, Samantha Skindell's custodial rights are defined by Canadian law. Convention Art. 3(a).

19.     Samantha Skindell has custodial rights pursuant to Canada law, which made the child's removal and retention in the United States contrary to Samantha Skindell's custodial rights.

20.     Because Justin Skindell's retainment in the United States of America and removal of the child from his habitual residence in Canada violated Samantha Skindell's custodial rights,

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com*

the removal was wrongful within the meaning of Article 3 of the Convention and in violation of Samantha Skindell's rights under the Convention and the ICARA, 42 U.S.C. § 11601, et seq.

21.     Because Justin Skindell's retainment in the United States and removal of the child from his habitual residence was wrongful, the Convention and the ICARA authorize this Court to order the return of the children forthwith. Convention, Art. 3; 42 U.S.C. § 11603.

22.     42 U.S.C. § 11604(b) conditions this Court's authority to order a child removed from a person having physical control of the child on the satisfaction of applicable requirements of state law.

23.     ICARA also authorizes this Court, "[i]n furtherance of the objectives of ... the Convention ... [to] take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604. Under Section 210(a) of the UCCJEA, "[t]he court may order any party to the proceeding who is in this State or over whom the court has personal jurisdiction to appear personally before the court. If that party has physical custody of the child the court may order that he appear personally with the child …. "

24.     The purpose of the Convention is to determine which country is most appropriate to have jurisdiction, not to determine the best parent or to determine best interest of the child. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20, 130 S. Ct. 1983, 1995 (2010). "The entire purpose of the Convention is to deter parents from absconding with their children and crossing international borders in the hopes

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE*
*Seattle, WA  98125*
*Tel: (206) 223-0840*
*Fax: (206) 260-1420*
*E-Mail: yale@yalelewislaw.com*
*E-Mail: admin@yalelewislaw.com*

of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012).

25.    A Complaint under the Convention may be treated as an application for a Writ of Habeas Corpus under 28 U.S.C. §2241, et seq., pursuant to which this Court may issue an order directing Justin Skindell to show cause on an expedited basis why the children should not be returned immediately to the jurisdiction of their habitual residence in Canada. *See Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus ... pursuant to 28 U.S.C.A. § 2243"); *see also Miller v Miller*, 240 F.3d 392, 397- 98 (4th Cir. 2001); *In re: McCullough*, 4 F. Supp. 2d 411 (W. D. Penn., 1998); Convention, Art. 11 (Establishing six-week target time frame for resolution of petitions under the Convention).

26.    The Petition is filed less than one (1) year from the time that Justin Skindell wrongfully retained the child in the United States of America.

27.    Samantha Skindell has incurred, and will continue to incur, various necessary expenses, including court costs, legal fees, transportation and other costs relating to the return of the child. Samantha Skindell respectfully requests that this Court award her all fees and costs, including transportation costs an attorney's fees, incurred as required by 28 U.S.C. § 9007.

28.    Pursuant to 28 U.S.C. § 9004 and the Hague Convention, Article 16, Samantha Skindell requests that this Court issue an immediate order restraining Justin Skindell from removing the child from the jurisdiction of this Court, directing any United States Marshall or other law enforcement officer to bring the child before this Court. Samantha Skindell also asks this Court to schedule an expedited hearing on the merits of the Petition.

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com*

29.     Pursuant to 28 U.S.C. § 9003(c), Justin Skindell shall be given notice of these proceedings in accordance with the laws governing notice to interstate child custody proceedings.

**WHEREFORE**, Samantha Skindell respectfully requests that this Court enter orders granting her the following relief:

A.     A Preliminary Show Cause Order:

1.     Commanding Justin Skindell (with or without the minor child) to appear in this Court to show cause why the minor child has been kept from his Samantha Skindell and why the minor child should not be returned to Canada forthwith including the scheduling of an expedited preliminary hearing on the merits of the Complaint, an Order that Justin Skindell show cause at this hearing why the child should not be returned to Canada and, pursuant to Federal Rule of Civile Procedure 64, an Order that the trial of the action on the merits be advanced and consolidated with the hearing on the verified complaint;

2.     Requiring Justin Skindell to surrender to this Court any passports, residency and travel documents in his name, Samantha Skindell's name, and/or in the name of the minor child;

3.     Prohibiting the child's removal from the jurisdiction of this Court, pending final determination of the Petition;

4.     Requiring Justin Skindell to make the child available for daily communication via the internet and telephone pending a final resolution of the Petition; and

5.     Providing that if Justin Skindell fails to appear pursuant to this Court's Show Cause Order, this Court will issue an Order directing that the name of the minor child be

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE*
*Seattle, WA 98125*
*Tel: (206) 223-0840*
*Fax: (206) 260-1420*
*E-Mail: yale@yalelewislaw.com*
*E-Mail: admin@yalelewislaw.com*

entered into the National Crime Information Center (more commonly known as "NCIC") computer system missing persons section and that an arrest warrant will be issued for Justin Skindell.

      B.      A Final Order:

            1.      An Order declaring and adjudicating that Justin Skindell's removal/retention of the child in the United States was wrongful under Article 3 of the Convention;

            2.      An Order compelling the return of the child to their habitual residence in Canada;

            3.      An Order requiring Justin Skindell to pay the necessary expenses incurred by Samantha Skindell in connection with these proceedings, pursuant to 22 U.S.C. § 9007, such expenses and costs to be resolved via post-judgment motion; and

            4.      Granting such other and further relief as this Court deems just and proper.

      Dated this 23rd day of February, 2022

Law Offices of O. Yale Lewis III            s/ O. Yale Lewis III
O. Yale Lewis III                    O. Yale Lewis III
11515 36th Avenue NE
Seattle, WA 98125
Phone (206) 223-0840
Facsimile (206) 260-1420
yale@yalelewislaw.com

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE*
*Seattle, WA 98125*
*Tel: (206) 223-0840*
*Fax: (206) 260-1420*
*E-Mail: yale@yalelewislaw.com*
*E-Mail: admin@yalelewislaw.com*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MASTERS LAW GROUP LLC
Anthony G. Joseph, Esq. (Illinois ARDC No. 6303632)
Erin E. Masters, Esq. (Illinois ARDC No. 6283476)
30 N. LaSalle Street, Suite 2250
Chicago, Illinois 60602
Phone : (312) 609-1700
Facsimile : (312) 893-2002
ajoseph@masters-lawgroup.com
(pending pro hac vice application)

Law Offices of O. Yale Lewis III
11515 36th Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com

VERIFICATION

Under penalties of perjury as provided by the State of Illinois law, the undersigned hereby certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information, and belief, such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

This 23rd day of February, 2022



Samantha Skindell

- PAGE 12 OF 13

Law Offices of O. Yale Lewis III
11515 36th Ave. NE
Seattle, WA  98125
Tel: (206) 223-0840
Fax: (206) 260-1420
E-Mail: yale@yalelewislaw.com
E-Mail: admin@yalelewislaw.com

1

EXHIBIT LIST

2

Exhibit A:    The Convention on the Civil Aspects of International Child Abduction, done at
3            the Hague on October 25, 1980 (T.I.A.S. No. 11, 670 at 1, 22514 U.N.T.S. at 98,
             reprinted in 51 Fed Reg. 10494 (1986)

4

Exhibit B:    Redacted Birth Certificate of S.S.
5

Exhibit C:    Hague Convention Application filed by Samantha Skindell on December 2, 2021
6            and exhibits

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Law Offices of O. Yale Lewis III**
*11515 36th Ave. NE*
*Seattle, WA  98125*
*Tel: (206) 223-0840*
*Fax: (206) 260-1420*
*E-Mail: yale@yalelewislaw.com*
*E-Mail: admin@yalelewislaw.com*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

# Exhibit A

Cover Sheet



**28. CONVENTION ON THE CIVIL ASPECTS OF
INTERNATIONAL CHILD ABDUCTION[1]**

*(Concluded 25 October 1980)*

The States signatory to the present Convention,
Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,
Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,
Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I – SCOPE OF THE CONVENTION

Article 1

The objects of the present Convention are –
*a)*    to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
*b)*    to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

Article 3

The removal or the retention of a child is to be considered wrongful where –
*a)*    it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
*b)*    at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction*  (ISBN 90 12 03616 X, 481 pp.).



EXHIBIT A

### Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

### Article 5

For the purposes of this Convention –
*a)*   "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
*b)*   "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

CHAPTER II – CENTRAL AUTHORITIES

### Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

### Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
*a)*   to discover the whereabouts of a child who has been wrongfully removed or retained;
*b)*   to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
*c)*   to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
*d)*   to exchange, where desirable, information relating to the social background of the child;
*e)*   to provide information of a general character as to the law of their State in connection with the application of the Convention;
*f)*   to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
*g)*   where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
*h)*   to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
*i)*   to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

CHAPTER III – RETURN OF CHILDREN

### Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –



EXHIBIT A

a)   information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;
b)   where available, the date of birth of the child;
c)   the grounds on which the applicant's claim for return of the child is based;
d)   all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.
The application may be accompanied or supplemented by –
e)   an authenticated copy of any relevant decision or agreement;
f)   a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;
g)   any other relevant document.


Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.


Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.


Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.
If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.


Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.
Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.


Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –
a)   the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or


EXHIBIT A

*b)*    there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.



EXHIBIT A

Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV ─ RIGHTS OF ACCESS

Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.
The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.
The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V ─ GENERAL PROVISIONS

Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

Article 23

No legalisation or similar formality may be required in the context of this Convention.

Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.
However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.


EXHIBIT A

Article 26

Each Central Authority shall bear its own costs in applying this Convention.
Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.
However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.
Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –
a)      any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;
b)      any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

EXHIBIT A

Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI — FINAL CLAUSES

Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.


EXHIBIT A

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.


Article 39


Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.


Article 40


If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.


Article 41


Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.


Article 42


Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.


Article 43


The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.



EXHIBIT A

Thereafter the Convention shall enter into force –
(1)     for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;
(2)     for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.
If there has been no denunciation, it shall be renewed tacitly every five years.
Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.
The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –
(1)     the signatures and ratifications, acceptances and approvals referred to in Article 37;
(2)     the accessions referred to in Article 38;
(3)     the date on which the Convention enters into force in accordance with Article 43;
(4)     the extensions referred to in Article 39;
(5)     the declarations referred to in Articles 38 and 40;
(6)     the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;
(7)     the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.



EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

# Exhibit B

Cover Sheet



# STATE OF WASHINGTON
# DEPARTMENT OF HEALTH

## CERTIFICATE OF LIVE BIRTH



STATE FILE NUMBER:
**146-2019-068856**

DATE ISSUED:
**NOVEMBER 08, 2019**

FIRST AND MIDDLE NAME(S):
**S███████████**

LAST NAME(S):
**S███████**

DATE AND TIME OF BIRTH:
**████ 2019 ██████**

SEX:
**MALE**

PLACE OF BIRTH (CITY, COUNTY, STATE):
**OLYMPIA, THURSTON COUNTY, WASHINGTON**

FACILITY:
**PROVIDENCE ST PETER HOSPITAL**

MOTHER'S NAME PRIOR TO FIRST MARRIAGE:
**SAMANTHA TAYLA MARTIN**

MOTHER'S PLACE OF BIRTH:
**CANADA**

MOTHER'S DATE OF BIRTH:
**████ 1991**

FATHER'S NAME:
**JUSTIN ROBERT SKINDELL**

FATHER'S PLACE OF BIRTH:
**SOUTH CAROLINA**

FATHER'S DATE OF BIRTH:
**████ 1990**

DATE FILED:
**OCTOBER 25, 2019**

FEE NUMBER:

DOH 422-132 (8/18)

NOT VALID IF PHOTOCOPIED OR ALTERED

EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

# Exhibit C

Cover Sheet



**Province of British Columbia, Canada**

**APPLICATION UNDER THE HAGUE CONVENTION**
**ON THE CIVIL ASPECTS OF**
**INTERNATIONAL CHILD ABDUCTION**

FILL OUT ALL INFORMATION
Provide information below to the extent it is available

*Attach additional pages if necessary to provide all of your information*

This is an application for (choose one): ⦿Return   ◯Access   of / to the child(ren) listed below.

## I. FIRST CHILD SUBJECT OF APPLICATION (if more than one child please see page 4)

| Child's name (Last, First, Middle) | Date of Birth | Place of Birth |
|---|---|---|
| S█████ S███████ J█████ | ███2019 | Washington |

| Address (at time of removal / retention or denial of access) | Canadian SIN | Passport # |
|---|---|---|
| ████████████████████BC | N/A | ████8172 |

| Address of child's current location | Telephone number | Citizenship |
|---|---|---|
| Unknown | ████████ | Canadian/US |

| Height | Weight | Hair Colour | Eye Colour |
|---|---|---|---|
| 2'5" | 32lbs | blonde | blue |

| Name of child's Mother if not listed in Parts II or III | Name of child's Father if not listed in Parts II or III |
|---|---|
| | |

## II. APPLICANT (PERSON SEEKING RETURN OF / ACCESS TO CHILD(REN))

| Name (Last, First, Middle) | Date of Birth | Place of Birth |
|---|---|---|
| Skindell, Samantha, Talya | █████ 1991 | Vancouver, BC |

| Relationship to Children | Citizenship(s) | Canadian SIN | Passport Country: Number: |
|---|---|---|---|
| Mother | Canadian | ████0146 | |

| Current address, telephone number, and email address | Occupation |
|---|---|
| ████████████████████BC, ████████ | receptionist, sterilization assistant |

| Name, Address, and Telephone Number of Legal Advisor in British Columbia, if any |
|---|
| N/A<br>Hugo Johnson at Dellino Law in Seattle, WA<br>6363 7th Ave NE suite 105 Seattle, WA 98105<br>206-659-6839 |



**EXHIBIT C**

**III. PERSON ALLEGED TO HAVE WRONGFULLY REMOVED OR RETAINED THE CHILD(REN), OR WHO DENIED ACCESS TO THE CHILD(REN)**

| Name (Last, First, Middle) | Date of Birth | Place of Birth |
|---|---|---|
| Skindell, Justin, Robert | ████ 1990 | United States |

| Relationship to Children | Citizenship(s) | Canadian SIN | Passport |
|---|---|---|---|
| Father | United States | unknown | Country: USA<br>Number: ████ 9346 |

| Occupation, Name & Address of Employer (if known) | Known Aliases |
|---|---|
| unemployed/ unknown | N/A |

**Current address, telephone number, and email address**
unknown, ████████, justin.skindell@gmail.com

| Height | Weight | Hair Colour | Eye Colour |
|---|---|---|---|
| 5'10" | 185lbs | bald or blond | green |

**IV. TIME, PLACE, DATE AND CIRCUMSTANCES OF THE WRONGFUL REMOVAL / RETENTION OR DENIAL OF ACCESS**

When and how was the child removed or retained, or access denied?  Tell your story fully (attach additional pages if necessary).

See Separate Page

**V. FACTUAL AND LEGAL JUSTIFICATION FOR THE REQUEST**

For return applications - provide details to establish the child's place of habitual residence; and provide information and documents to establish that you had and were exercising a right of custody at the time of the removal or retention.  For return and access applications – provide copies of any relevant court orders and/or agreements.

See Separate Page

EXHIBIT C

**Supporting Documentation (Please check applicable boxes and attach documents)**

☑ British Columbia law/statute in force at time of alleged removal / retention

☑ Court Order in effect at time of alleged removal / retention or denial of access

☐ Legally binding Agreement

☑ Recent photos of child and other parent

☑ Child's Birth Certificate (required)

☑ **Other:** Screenshot of visit extension, Post-retention Washington state court documents, Visa letter,

---

**Are civil court proceedings currently in progress?** ⦿Yes ◯No
**If yes, please provide details:**

My husband has filed for Divorce and primary custody of our child, the court case number is: 21-3-04078-6 filed with the superior court of washington in pierce county

---

## VI. PROPOSED ARRANGEMENTS FOR RETURN TRAVEL OF CHILD(REN), OR PROPOSED ACCESS

I will drive down and pick him up and bring him home with me.

---

## VII. OTHER PERSONS WITH ADDITIONAL INFORMATION RELATING TO THE WHEREABOUTS OF THE CHILD(REN) -- Preferably, in country of child's current location

| | |
|---|---|
| **Name:** Heidy Ann North<br>**Address:** Sarasota Florida<br>**Telephone number:** ▉▉▉▉▉<br>**Email address:** | **Name:** Christopher North<br>**Address:** Sarasota Florida<br>**Telephone number:** ▉▉▉▉▉<br>**Email address:** cknorth50@gmail.com |
| **Name:** Joseph Faiola<br>**Address:** ▉▉▉▉▉ Tacoma, WA<br>**Telephone number:** ▉▉▉▉▉<br>**Email address:** faiolajoseph98@gmail.com | **Name:**<br>**Address:**<br>**Telephone number:**<br>**Email address:** |

---

## VIII. OTHER RELEVANT INFORMATION

I know from the court paperwork that he is somewhere in Seattle and looking for work as a remote IT professional. He drives a silver 2016 KIA Sorento with BC License plates.

---

| **Signature of Applicant** | **Date** |
|---|---|
| *[signature]* | December 2, 2021 |

**EXHIBIT C**

**SECOND CHILD SUBJECT OF APPLICATION**

| Child's name (Last, First, Middle) | | Date of Birth | Place of Birth |
|---|---|---|---|
| Address (at time of removal/refusal of access) | | Canadian SIN | Passport # |
| Address of child's current location | | Telephone number | Citizenship |
| Height | Weight | Hair Colour | Eye Colour |
| Name of child's Mother if not listed in Parts II or III | | Name of child's Father if not listed in Parts II or III | |

**THIRD CHILD SUBJECT OF APPLICATION**

| Child's name (Last, First, Middle) | | Date of Birth | Place of Birth |
|---|---|---|---|
| Address (at time of removal/refusal of access) | | Canadian SIN | Passport # |
| Address of child's current location | | Telephone number | Citizenship |
| Height | Weight | Hair Colour | Eye Colour |
| Name of child's Mother if not listed in Parts II or III | | Name of child's Father if not listed in Parts II or III | |

**FOURTH CHILD SUBJECT OF APPLICATION**

| Child's name (Last, First, Middle) | | Date of Birth | Place of Birth |
|---|---|---|---|
| Address (at time of removal/refusal of access) | | Canadian SIN | Passport # |
| Address of child's current location | | Telephone number | Citizenship |
| Height | Weight | Hair Colour | Eye Colour |
| Name of child's Mother if not listed in Parts II or III | | Name of child's Father if not listed in Parts II or III | |



EXHIBIT C

## AUTHORIZATION TO ACT

I hereby authorize the British Columbia central authority and the *United States* central authority under the Hague Convention on the Civil Aspects of International Child Abduction, and their agents, to act on my behalf and to do all things reasonable and necessary in connection with my application for return of or access to my child(ren), including disclosing personal information contained in or relating to this application to other agencies or authorities, whether located within or outside Canada.

Dated this _2_ day of _December_ , 20_21_ .

WITNESSED BY:

_____ )
Signature of witness

_IAN MARTIN_ )
Print name of witness

███████████████████ )
Address of witness

_Be_ ██████████ )

_____
Signature of applicant

EXHIBIT C .1



United States Department of State

*Washington, D.C.   20520*

## Authorization to Release Case Information
For use by the U.S. Department of State, Office of Children's Issues

I, _Samantha Talya Skindell_ (name), the _Mother_ (relationship to child/ren) of the child/ren listed below, authorize the Office of Children's Issues to discuss my child/ren's case with prospective attorneys and mediators in the United States.

Name of child: S███ J██ S███          DOB: ██████ 2019
Name of child: _____          DOB: _____
Name of child: _____          DOB: _____
Name of child: _____          DOB: _____

Is the child/ren a citizen of the United States?                 x_ Yes      ____No
Is the child/ren a permanent legal resident of the United States? ____Yes      ____No

In the event that persons or organizations other than prospective attorneys request information regarding your child/ren's case, The Office of Children's Issues may release information to:

Family Members and/or Friends:                         x_ Yes   ___No

Please list full names and relationship to child:
Kelly Ann Martin Grandmother
Ian Ross Martin Grandfather
_____
_____

Media organizations   (newspaper, television, etc.)      ___ Yes  x_No
Members of the U.S. Congress                         x_ Yes  ___No

_Signature of Applicant_

December 2, 2021
Date

12/12

**EXHIBIT C .2**



EXHIBIT C .3



United States Department of State

*Washington, D.C.   20520*

Voluntary Return Letter Acknowledgement

Dear Applicant:

Pursuant to Article 7 of the 1980 Convention on the Civil Aspects of International Child Abduction (Convention), and to encourage voluntary resolutions to International Parental Child Abduction cases, the U.S. Central Authority often sends a Voluntary Return Letter to the parent currently living with the child informing him or her of the application for return of the child/ren to their habitual residence under the Convention.  The letter also provides general information about the Convention, explains our role as Central Authority, and informs the parent that if a voluntary resolution is not reached, court proceedings may be initiated by the other parent.

The U.S. Central Authority sends this letter as part of our regular process, but recognizes that sending such a letter may not be appropriate in all cases.  For this reason, we ask you to consider your family's circumstances and inform our office as to whether or not you would like us to send the letter.

Please note the decision to send the letter rests solely with the U.S. Central Authority.  Sending such a letter should not be considered a judgment by our office as to the merits of any particular case.  Should our office determine that it is appropriate under the Convention to send a Voluntary Access Letter in your case, we will provide you with a copy of the letter that is sent.

Please complete and sign the statement below.

I, Samantha Talya Skindell _____ (applicant parent), ask the U.S. Central Authority to:

   ☐ Yes, send Voluntary Return Letter

   ☒ No, please DO NOT send Voluntary Return Letter.

to _Justin Robert Skindell_____ (parent with child) under the Hague Convention as a way to seek a voluntary resolution of my case.  If selecting "No" please explain the reason:

Justin has a lot of family in the united states, and I believe that if served a voluntary return letter he would dissapear with

S█████

EXHIBIT C.4



United States Department of State

*Washington, D.C.   20520*

December 16, 2021

The Honorable James Orlando
Superior Court Judge
Superior Court Administration
930 Tacoma Ave South
Room 334 County-City Bldg.
Tacoma, WA 98402
supcrtdept1@piercecountywa.gov

**<u>Re: Justin Robert Skindell, Petitioner vs. Samantha Skindell, Respondent</u>**
Docket Number: 21-3-04078-6

Dear Judge Orlando:

      I am writing to you because we understand that S███████ S███████ is currently the subject of a proceeding relating to custody before your court.  You should therefore be aware that an application for the return of S███████ S███████ to Canada under the 1980 Hague Convention on the Civil Aspects of International Child Abduction (Convention) has been received by the Department of State, which serves as the U.S. Central Authority for the Convention.  This fact may affect your administration of the custody proceeding before you.

      **Article 16** of the Convention provides that, "after receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained *shall not decide on the merits of rights of custody* until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice." (Emphasis added)

      The Convention entered into force between the United States and Mexico in October 1, 1991.  The International Child Abduction Remedies Act, 22 U.S.C. § 9001 - 9111 (1988) (ICARA) implemented the Convention in the United States.[1]  The U.S. Department of State, Office of Children's Issues, performs the functions of the Central Authority for the United States under the Convention.[2]

---

[1] U.S. Department of State regulations implementing the Convention and ICARA can be found at 22 C.F.R Part 94. The Convention is available at 51 Fed. Reg. 10503 (1986), and is a treaty of the United States within the meaning of Article II and VI of the U.S. Constitution.

[2] The U.S. Department of State, Office of Children's Issues, acts as the U.S. Central Authority for the Convention pursuant to the authority granted by Executive Order 12648 and 22 C.F.R § 94.2. The Central Authority carries out the functions ascribed to it in Article 7.



SENSITIVE BUT UNCLASSIFIED

**EXHIBIT C-5**

In sum, **Article 16** requires that when a court considering custody of a child receives notice that an application for return of a child under the Convention has been received, it should defer any decision on the merits of rights of custody until an appropriate federal or state court has determined that the child is not to be returned under the Convention.  The applicant, the applicant's counsel, or the Department's Country Officer should be able to keep you informed of the status of the petition for return of the child.

This letter should not be construed as constituting an opinion of the United States or the Department of State, regarding the merits of custody or any other matter before the 341st Judicial District.  The sole purpose of this letter is to give the court notice that the U.S. Central Authority has received an application under the Convention and to draw the court's attention to relevant federal law, including the requirements of Article 16.  Should you have any questions or need additional information, please do not hesitate to contact Country Officer Brian Campbell at 585-430-0428.

Please find below internet links to the primary source material for the Convention:

1) The text of the Convention and the Department of State's legal analysis of the Hague Convention published in the Federal Register on March 26, 1986 (Vol. 51, No. 58), at http://travel.state.gov/content/dam/childabduction/Legal_Analysis_of_the_Convention.pdf;

2) The U.S. implementing legislation for the Convention, ICARA, at http://travel.state.gov/content/dam/childabduction/International_Child_Abduction_Remedies_Act.pdf;

3) The official explanatory report of the Convention done by Elias Perez-Vera, at http://hcch.e-vision.nl/upload/expl28.pdf.  The Perez-Vera report is recognized by the Hague Conference on Private International Law as the official history and commentary on the Convention and is a source of background on the meaning of its provisions.

Thank you for your consideration.


Sincerely,

Daniel E. Slusher

Daniel E. Slusher
Branch Chief
Office of Children's Issues

CC: Samantha Skindell and Counsel                CC:    Gregory J. Morphew, Esquire
                                                        gmorphew@goldbergjones.com

SENSITIVE BUT UNCLASSIFIED

EXHIBIT C-6